Owen-Fields Importing Co., Inc. v. Commissioner.
Owen-Fields Importing Co. v. Commissioner
Docket No. 25216.
United States Tax Court
1950 Tax Ct. Memo LEXIS 42; 9 T.C.M. (CCH) 1030; T.C.M. (RIA) 50279; November 17, 1950
Daniel L. Brenner, Esq., 2700 Fidelity Bldg., Kansas City, Mo., for the petitioner. Gene W. Reardon, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income and excess profits taxes for petitioner's taxable year March 1, 1943, to October 31, 1943, in the respective amounts of $633.41 and $7,532.51, plus a 25 per cent penalty amounting to $1,883.13 for failure to file an excess profits tax return. Some of the issues raised in the pleadings have been settled by stipulation, leaving for our consideration the following: (1) Is the notice of deficiency on which this proceeding is brought defective and "null and void" because of its failure to disclose the manner in which the *43 deficiencies were determined? (2) Is the assessment of any additional income tax for 1943 barred by the statute of limitations? (3) Did the respondent err in disallowing the deduction of commissions, based on sales, credited at the end of the taxable year to a person, then serving in the United States armed forces, who was not and never had been an officer or employee of petitioner? (4) Is petitioner liable for a penalty of 25 per cent for failure to file an excess profits tax return for 1943? Findings of Fact Petitioner is a Missouri corporation, organized in March 1943. It filed its income tax return for the taxable year March 1 to October 31, 1943, with the collector of internal revenue for the sixth district of Missouri. Since its organization the petitioner has been engaged in the importation from Mexico and sale in this country of various commodities, such as candy, chewing gum, syrup, furniture, and certain jute products. It was agreed at the time of petitioner's organization that 20 per cent of its gross sales should be paid in equal shares to four persons who were to be largely responsible for the conduct of the business, in lieu of salaries. These were Harry *44 J. Baruch, who was to serve as president and do all the buying; his wife, Grace Baruch, who was to look after custom matters at Laredo, Texas; and Michael Berbiglia and Louis Gillotti, who were to be in charge of the sales at Kansas City. It was so provided in a resolution adopted by the board of directors at their first meeting held March 18, 1943. [1]c *45 Gillotti was at that time serving in the United States armed forces and so served from January 1, 1943, to February 1946. During the taxable year Berbiglia handled all of the sales. Commissions were credited to Harry and Grace Baruch and to Berbiglia in petitioner's books during the taxable year as follows: Grace and
Harry
Date
Baruch
M. Berbiglia
5/31/43 Credit
$ 3,817.74
$ 3,817.74
5/31/43 Credit
3,174.83
3,174.84
6/30/43 Credit
16,431.70
16,431.70
7/31/43 Credit
5,156.80
5,156.80
8/31/43 Credit
8,354.46
8,354.46
9/31/43 Credit
3,870.71
3,870.71
Total
$40,806.24
$40,806.25 There was a "charge back" in each of the above accounts, that is, the joint account of Harry and Grace Baruch and the account of Berbiglia, on October 30, 1943, of $19,000, leaving a credit balance in each account of $21,806.24. Also, on October 30, 1943, a charge was made against the account of Berbiglia of $10,903.12, one-half of the amount thereof, and a credit of the same amount was entered in the account of Gillotti. This was done on Berbiglia's instructions by the accountant who kept petitioner's books and prepared its returns. The accountant prepared and filed *46 an income tax return for Gilletti, in which he reported the receipt of compensation of $10,903.12 from the petitioner and $2,400 from Berbiglia. Some of the amount so credited to Gillotti was used to pay his federal income tax and other taxes due for 1942, and 1943, and subsequent years. In its income tax return for 1943 the petitioner treated the credit balances in the above mentioned accounts at the close of the taxable year, amounting in the aggregate to $43,612.48, as cost of goods purchased, thereby reducing the gross profit on sales by that amount. The items reported under "Gross Income" were as follows: Gross sales (where
inventories are
an income-determining
factor)
$565,156.56
Less: Returns and allowances
$565,156.56
Less: Cost of goods sold
(from Schedule A)
516,510.60
Gross profit from sales
$ 48,645.96 In "Schedule A" the following items appear: Schedule A. - COST OF GOODS SOLD
(Where inventories are an income-determining
factor)
Inventory at beginning of year
Material or merchandise bought for
manufacture or sale
$574,759.36
Salaries and wages
Other costs per books. (Attach
itemized schedule)
Total
$574,759.36
Less: Inventory at end of year
58,248.76
Cost of goods sold (enter as item
2, page 1)
$516,510.60
*47 In his audit of the return the respondent disallowed the deduction of the commissions as a cost item but in lieu thereof deducted them as a business expense, but only to the extent of $32,709.36, which was the sum of the amounts credited to Harry and Grace Baruch and Berbiglia during the taxable year. The notice of deficiency contains no explanation of the disallowance of that portion of the commissions credited to Gillotti. The petitioner left the preparation and filing of its income tax returns entirely to its accountant who regularly kept its books. The accountant did not believe that petitioner was required to file an excess profits tax return for 1943 and so did not file one. The income tax return which he did prepare and file for that year showed a net income of $1,501.28, an income tax due of $225.20, and no declared value excess profits tax liability. The adjustments made in the return by the respondent and the explanation thereof, as set out in the notice of deficiency, were as follows: Adjustments to Net Income - 1943
Net income as disclosed by return
$ 1,501.28
Unallowable deductions and addi-
tional income: (a) Sales understated
43,612.48
Total
$45,113.76
Nontaxable income and additional
deductions: (b) Additional commis-
sions
$32,709.36
(c) Error in addition
70.00
(d) Net operating loss
deduction - 1944
393.98
33,173.34
Net income adjusted
$11,940.42
*48 Explanation of Adjustments - 1943 (a) Information on file discloses that sales were understated by reason of charges for amounts credited to officers. (b) Additional commissions are allowable in the amount of $32,709.36. (c) and (d) These adjustments were previously agreed to by you and the deficiency resulting from such adjustments and correction of the tax computation has been assessed. Petitioner's income and declared value excess profits tax return for the taxable year March 1 to October 31, 1943, was filed January 15, 1944. Waivers were executed by petitioner May 9, 1947, and December 16, 1947, extending the time for assessment of taxes due thereon to June 30, 1949. The notice of deficiency was mailed to petitioner June 29, 1949. Opinion LEMIRE, Judge: Petitioner alleges in its petition and argues in its brief that the notice of deficiency is defective in that it fails to state the facts and figures upon which the deficiencies were determined, and that such notice should be declared null and void and without effect. Petitioner has not moved for dismissal of the proceeding for want of jurisdiction or for enlargement of the notice of deficiency and has made no special *49 plea to the jurisdiction of this Court based on the alleged defectiveness of the notice. In any event, we think that the notice of deficiency meets the requirements of the statute. Section 272(a)(1), Internal Revenue Code, authorized the Commissioner to send a notice of deficiency to the taxpayer by registered mail but makes no specific requirements as to the form of such notice. The notice here states: "You are advised that the determination of your income tax liability for the taxable year March 1, 1943 to October 31, 1943 discloses a deficiency of $633.41 and that the determination of your excess profits tax liability for the taxable year mentioned discloses a deficiency of $7,532.51 and $1,883.13 in penalty, as shown in the statement attached." The attached statement referred to is set out in part above in our findings of fact. It plainly shows the addition to gross income of the $43,612.48 of commissions which had been erroneously added to cost of merchandise held for sale, and the allowance of all but $10,903.12 of that amount as a deduction in determining net income. There is no merit in petitioner's contention that the notice of deficiency is not *50 a valid and sufficient notice. We will next consider the question of the statute of limitations as a bar to the assessment of any additional income tax for 1943. Respondent concedes that under the general statute of limitations, section 275(a), Internal Revenue Code, the three-year period for the assessment of any income tax against the petitioner for 1943 expired January 15, 1947, before the waivers were executed. He contends, however, that petitioner omitted from its return gross income in excess of 25 per cent of the gross income reported, and that, therefore, the statute of limitations was extended by section 275(c), Internal Revenue Code, to five years from the date the return was filed. The omission from gross income is said to have resulted from petitioner's erroneous treatment of the commissions which it credited to Harry and Grace Baruch, Berbiglia, and Gillotti as a part of the cost of merchandise held for sale, rather than as a business expense to be deducted from gross income in computing net income. The manner in which these various items were shown in the return is set out above in our findings of fact. The first item *51 shown on the return under the heading "Gross Income" is "Gross sales," $565,156.56. The next item is "Cost of goods sold," $516,510.60, and the third is "Gross profit from sales," $48,645.96, the difference between gross sales and cost of goods sold. Both parties accept the figure of $48,645.96 as "the amount of gross income stated [*] the return," within the meaning of section 275(c). Our question is: was there an omission of gross income in the return in excess of 25 per cent of that amount? According to the form of the return, the cost of goods sold is to be brought forward from schedule A on page 2 of the return. Schedule A, as prepared by the petitioner, shows merchandise bought for sale in the amount of $574,759.36 and the deduction therefrom of a gross inventory of $58,248.76, leaving a cost of goods sold of $516,510.60. What petitioner did was to include the commissions of $43,612.48 in merchandise bought for sale, thereby overstating the cost of such merchandise and understating gross income by that amount. Respondent's position is that the commissions amounting to $43,612.48 were erroneously included in the cost of merchandise held for sale and should therefore be *52 added to the reported gross income of $48,645.96, making a total gross income of $92,258.44. If he is correct in those figures, the amount omitted from gross income ($43,612.48) is more than 25 per cent of the reported gross income ($48,645.96) and section 275(c) applies. Petitioner argues that since in determining the cost of goods sold, under schedule A, "Salaries and wages" are permitted to be added to merchandise bought for sale, the commissions did, in any event, serve to reduce the gross income to the amount reported in the return. It should be noted that the first item on the return under deductions is "Compensation of officers (From Schedule F)" and the second, "Salaries and wages (not deducted elsewhere)". This shows the separateness of the two items and indicates that while salaries and wages may be deducted elsewhere, as in schedule A, the compensation of officers cannot be. We do not know whether Berbiglia and Grace Baruch were officers of petitioner. Harry J. Baruch is referred to in the corporate minutes as president, although he testified "I think I was Vice-President" in 1943. He further testified that he did not know whether he himself was a stockholder or whether *53 Berbiglia and Gillotti were stockholders or who were petitioner's officers. According to the corporate minutes, the board of directors was composed of Harry J. Baruch; Carolyn Di Capo and Helen Broaddus, who were, respectively, president, vice-president, and secretary and treasurer of petitioner. Thus, at the outset, petitioner has failed to present us with evidence on which we can determine that the commissions in question were salaries or wages rather than compensation of officers, and were not "properly includible" in gross income within the meaning of section 275(c). In Estate of C. P. Hale, 1 T.C. 121, the taxpayer reported in gross income the total amount of dividends shown in a schedule attached to the return. In the schedule he erroneously omitted from the cost of such dividends certain amounts which he designated "Capital." In holding that, since the amount so omitted was in excess of 25 per cent of the gross income reported, section 275(c) applied, we said: "The amount of $2,176.70 set forth in the return as an amount received from certain corporations and designated therein as 'Capital' can not be said to be reported as gross income. Capital is not includible *54 in gross income. The amount was treated as a capital receipt. It was reported as such and not as income received. Failure to report it as income received was an omission resulting in an understatement of gross income in the return. The effect of such designation and failure to report as income was in substance the same as though the items had not been set forth in the return at all. The decedent 'failed to report a dividend' in 1936 by designating the $2,176.70 as 'Capital' and by net including the amount in item 6, dividends received, just as effectually as though he had failed to set forth the amount in his return. We see no reason for treating this item differently than other items conceded by petitioner to have been omitted from gross income, one of which, as stated by counsel for petitioner, was erroneously considered to be tax-free and another a retirement of certain preferred stock at par which decedent had mistakenly believed he had acquired at par." See also American Liberty Oil Co., 1 T.C. 386. The erroneous addition of the selling commissions to cost of merchandise held for sale was the same type of omission as we had in the Hale case. Moreover, there was *55 no schedule or other data in the petitioner's return showing how it computed the cost of merchandise held for sale. While the petitioner might reasonably have claimed the commissions in the return as salaries and wages to be added to merchandise bought for sale in determining cost of goods sold under Schedule A, the fact is that it did not do so and did not reveal anywhere in the return how the commissions had been treated. Regardless of whether, and to what extent, the commissions may have been deductible as a business expense in determining net taxable income, it is undeniable that their inclusion in cost of merchandise held for sale resulted in an understatement of, or omission from, gross income in excess of 25 per cent of the gross income reported. It follows that section 275(c) is applicable and that the deficiency in income tax is not barred by the statute. In determining the income tax deficiency, as well as the excess profits tax deficiency, the respondent allowed the deduction from gross income of, or the commissions standing to the credit of Harry and Grace Baruch and Berbiglia at the close of the taxable year, but disallowed the $10,903.12 credited to the account *56 of Gillotti. The disallowance of this amount is the only issue presented on the merits. Petitioner's return as filed does not show whether the amount in question was claimed as compensation to Berbiglia or as compensation to Gillotti. All such commissions were included in the cost of merchandise held for sale, without explanation. The petitioner argues, however, that the commissions were credited to Berbiglia in its books and that he voluntarily had them transferred to Gillotti without any authority from petitioner. It argues that the total amount of the commissions credited to Berbiglia during the taxable year, amounting to $21,806.24, was not more than reasonable compensation for the services rendered by him. The evidence is that it was agreed by the parties at the inception of petitioner's business that 20 per cent of gross sales should be paid in equal shares to Harry and Grace Baruch, who were to do the buying and importing, and to Berbiglia and Gillotti, who were to do the selling. So far as the evidence shows, that was the only corporate action ever taken in the matter of compensation for these persons. In petitioner's books, however, $40,806.24 was actually credited to *57 Harry and Grace Baruch, jointly, and $40,806.25 to Berbiglia during the taxable year, making a total of $81,612.49, of which $38,000 was charged back to petitioner at the close of the year. The respondent makes the argument in his brief, although he has not so determined, that if the $21,806.24 of commissions was intended as compensation for the services rendered by Berbiglia, his compensation was excessive to the extent of $10,903.12. The book entries themselves do not determine who was the actual recipient of these commissions. While originally all the commissions were charged to Berbiglia in petitioner's books from time to time during the year, a final entry was made transferring one-half of such credits to the account of Gillotti. That amount was reported in an income tax return which petitioner's accountant filed for Gillotti. Presumably, it was not reported by Berbiglia in his return. At any rate, there is no evidence that it was. In reporting the amount as compensation received by Gillotti from the petitioner, the accountant must have acted with the knowledge and approval, if not by the direction, of petitioner's officers and in accordance with his and their understanding *58 of the matter. This accountant testified in this proceeding that he reported the $10,903.12 in Gillotti's return "Because he had it coming to him. He earned it." Berbiglia did not appear as a witness at the hearing. Baruch testified that the original oral agreement between the parties was that one-half, or 10 per cent, of the commissions should be paid to Berbiglia, but we think that the best evidence of the terms of the agreement is that found in the resolution adopted by the board of directors at petitioner's inception. We conclude that petitioner intended the commissions to be compensation to Gillotti, rather than to Berbiglia. We must determine, therefore, whether, as such, they were deductible as an expense of the business. Gillotti never performed any services for petitioner. He entered the armed forces in January 1943 before petitioner was organized. We do not know what he did before that time or what connection he had with petitioner or its officers or stockholders. The respondent's regulations permit an employer to deduct the compensation, reasonable in amount, paid to an employee who is serving in the armed forces. See I.T. 3417, C.B. 1940-2. However, Gillotti was not *59 employed by petitioner when he entered the military services and never had been. He is not shown to have had any connection with the business in which petitioner was engaged, or to have had any particular qualifications which might have made his services valuable to petitioner after his release from military duty. In his opening statement counsel for the petitioner said that Gillotti had long been in the employ of Berbiglia, but even that is not in the evidence. We think that respondent correctly disallowed the deduction from gross income of the commissions credited to Gillotti in petitioner's books at the close of the taxable year. The final issue is whether petitioner is liable for a penalty of 25 per cent for failure to file an excess profits tax return for 1943. Petitioner's only explanation of its failure to file the return is that it left the matter entirely to its regularly employed accountant, and that he did not think that an excess profits tax return was due. Perhaps the accountant would have realized that an excess profits tax return was due, however, if he had correctly prepared the income tax return. In any event, that, obviously, is not a reasonable cause for failure *60 to file, such as would relieve petitioner from liability for the penalty. There is no evidence that any of petitioner's officers made any inquiry as to its liability to file an excess profits tax return, or that they gave any consideration to the accountant's qualifications to pass upon the matter. The penalty must be assessed, we think, if on the income as recomputed in accordance herewith an excess profits tax return is due. Decision will be entered under Rule 50. Footnotes
1. "The Chairman [Harry J. Baruch] stated that in order to transact business the corporation would have to pay commissions to Harry J. Baruch, Grace Baruch, Michael Berbiglia, and Louis Gillotti, and after considerable discussion, it was agreed that such commission to be paid by the corporation should be twenty per cent of the gross sales made by the corporation, to be equally divided among the above four named. Thereupon the following resolution was unanimously adopted: 'RESOLVED, that the corporation pay to Harry J. Baruch, Grace Baruch, Michael Berbiglia, and Louis Gillotti twenty per cent of all sales made by the corporation, which sum was to be equally divided among said four named persons and that said commission should be paid to said persons until such time as other or different arrangements were made with them.'"↩